# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BENEFYTT TECHNOLOGIES, INC. | ) | |
| (f/k/a Health Insurance Innovations, Inc.), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N21C-02-143 |
| | ) | PRW CCLD |
| CAPITOL SPECIALTY INSURANCE | ) | |
| CORPORATION, MAXUM | ) | |
| INDEMNITY COMPANY, CERTAIN | ) | |
| UNDERWRITERS AT LLOYD'S OF | ) | |
| LONDON, XL SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| EXECUTIVE RISK INDEMNITY, INC., | ) | |
| ARGONAUT INSURANCE COMPANY, | ) | |
| and ENDURANCE ASSURANCE | ) | |
| CORPORATION, | ) | |
| Defendants. | ) | |

Submitted: October 8, 2024
Decided: January 2, 2025
Written Decision Withdrawn, Clarified, and Reissued: January 6, 2025

*Upon Plaintiff's Partial Motion for Summary Judgment
on the Keippel Action Claim and Lloyd's Counterclaims,*
**GRANTED.**

*Upon Plaintiff's Partial Motion for Summary Judgment
on the Belin Action Claim,*
**DENIED.**

*Upon Defendant XL Specialty Insurance Company's
Motion for Summary Judgment,*
**GRANTED.**

*Upon Defendant Endurance Assurance Corporation's
Motion for Summary Judgment,*
**GRANTED.**

*Upon Defendant Executive Risk Indemnity, Inc.'s
Motion for Summary Judgment,*
**GRANTED**.

*Upon Defendant Certain Underwriters at Lloyd's of London's
Motion for Summary Judgment,*
**GRANTED in part, DENIED in part.**

## MEMORANDUM OPINION AND ORDER

Jennifer C. Wasson, Esquire, and Carla M. Jones, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Joshua Gold, Esquire (*argued*), Dennis J. Nolan, Esquire, and John Leonard, Esquire, ANDERSON KILL, P.C., New York, New York, *Attorneys for Plaintiff Benefytt Technologies, Inc*.

David J. Soldo, Esquire, MORRIS JAMES LLP, Wilmington, Delaware; Michael D. Margulies, Esquire (*argued*), and Charles W. Stotter, Esquire, CARLTON FIELDS, P.A., New York, New York, *Attorneys for Defendant Endurance Assurance Corporation*.

Robert J. Katzenstein, Esquire, and Julie M. O'Dell, Esquire, SMITH KATZENSTEIN & JENKINS LLP, Wilmington, Delaware; Ralph A. Guirgis, Esquire, Sean R. Simpson, Esquire (*argued*), and Amy Resh, Esquire, CLYDE & CO US LLP, Irvine, California, *Attorneys for Defendant Executive Risk Indemnity, Inc*.

Timothy Jay Houseal, Esquire, and Jennifer M. Kinkus, Esquire, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Raymond T. DeMeo, Esquire (*argued*), and Matthew M. Burke, Esquire, ROBINSON & COLE LLP, Boston, Massachusetts, *Attorneys for Defendant Certain Underwriters at Lloyd's of London*.

Robert J. Katzenstein, Esquire, and Julie M. O'Dell, Esquire, SMITH KATZENSTEIN & JENKINS LLP, Wilmington, Delaware; Matthew W. Beato, Esquire (*argued*), and Anna Schaffner, Esquire, WILEY REIN LLP, Washington, DC, *Attorneys for Defendant XL Specialty Insurance Company*.

**WALLACE, J.**

In 2018 and 2019, Plaintiff Benefytt Technologies faced seven different lawsuits or other enforcement actions that alleged securities violations, charges of racketeering, federal trade violations, and other related wrongdoings. Principally, two of those—the *Keippel* action and the *Belin* action—are at issue here. Benefytt is before this Court seeking a declaratory judgment against its then-extant insurers that those two underlying suits were covered by those companies' policies.

Upon the parties' cross-motions for summary judgment, the Court finds that (1) the *Keippel* action falls within the 2018-2019 policy period and (2) the *Belin* action falls outside the 2017-2018 policy period, outside the 2018-2019 policy periods, and is not interrelated with any other covered claim. With these findings in mind—and because the Insurers already indemnified for the *Keippel* action under the 2018-2019 policy—Certain Underwriters at Lloyd's of London reimbursement, recoupment, and unjust enrichment counterclaims are moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE PARTIES AND INSURANCE COVERAGE

Plaintiff Benefytt is a Delaware corporation with its principal place of business in Florida.[1] Before filing for bankruptcy, Benefytt operated a "health insurance technology business."[2] In connection therewith, Lloyd's provided

---

[1] Moving Parties' Joint Appendix of Exhibits ("JA") Ex. 1 ("Third Am. Compl.") ¶ 39, and Ex. 2 ("Lloyd's Answer"), at 20 (D.I. 239).

[2] *Benefytt Technologies, Inc. v. Capitol Specialty Insurance Corporation*, 2022 WL 16504, at *1

Benefytt $10 million in insurance coverage under both a 2017-2018 primary policy and a 2018-2019 primary policy.[3] Lloyd's also wrote the Primary Policies' language.[4] The other insurer defendants—Capitol Specialty Insurance Corporation, Maxum Indemnity Company, XL Specialty Insurance Company, Executive Risk Indemnity, Inc., Argonaut Insurance Company, and Endurance Assurance Corporation (collectively, "the Excess Policies")—each contracted to provide Benefytt $5 million in excess coverage above the previous insurance layer.[5]

The Policies provided coverage as follows:[6]

|  | Policy Number | Coverage Period | Coverage Amount |
|---|---|---|---|
| **Tower 1** | | | |
| Lloyd's | B0507N17FT08360 | 5/8/2017-5/8/2018 | $10M |
| XL Specialty | ELU149887-17 | 5/8/2017-5/8/2018 | $5M xs $10M |
| Executive Risk | 8242-2156 | 5/8/2017-5/8/2018 | $5M xs $15M |
| Endurance | DOX10006425402 | 5/8/2017-5/8/2018 | $5M xs $20M |
| **Tower 2** | | | |
| Lloyd's | B0621PHEAL003118 | 6/8/2018-6/8/2019 | $10M |
| XL Specialty | ELU155940-18 | 6/8/2018-6/8/2019 | $5M xs $10M |
| Argonaut | MLX4209146-0 | 6/8/2018-6/8/2019 | $5M xs $15M |
| Endurance | DOX10013192200 | 6/8/2018-6/8/2019 | $5M xs $20M |

---

(Del. Super. Ct. Jan. 3, 2022) ("*Benefytt I*"); *see* Transcript of Motions Hearing held on Tuesday, September 24, 2024 ("MSJ Tr.") at 40-45 (noting Benefytt filed for bankruptcy and its effect) (D.I. 327).

[3] JA Ex. 17 ("2017-2018 primary policy"), and Ex. 21 ("2018-2019 primary policy" and together with the 2017-2018 primary policy, "the Primary Policies").

[4] The Primary Policies.

[5] JA Ex. 18 ("XL 2017-2018 policy"), Ex. 19 ("Executive Risk 2017-2018 policy"), Ex. 20 ("Endurance 2017-2018 policy"), Ex. 22 ("XL 2018-2019 policy"), Ex. 23 ("Argonaut 2018-2019 policy"), Ex. 24 ("Endurance 2018-2019 policy"). In all relevant ways these are identical, so together with the Primary Policies, this collective shall hereinafter be the "Policy" or "Policies."

[6] JA Exs. 17-24.

- 2 -

All of these listed policies are functionally identical;[7] the Excess Policies generally follow the Primary Policies' operative language.[8]

## B. THE POLICIES' LANGUAGE

The Policies require Insurers to reimburse Benefytt for any:

> **Loss** which the **Company** is required or permitted or has agreed to pay as indemnification to any of the **Insured Persons** resulting from any **Claim** first made against the **Insured Persons** during the **Policy Period** for a **Wrongful Act**[.][9]

"Insured Persons" included "all persons who [] now are . . . directors, officers or risk managers of the **Company**[.]"[10]  The Policies define "Claim" as:

> any written demand for monetary damages, non monetary relief, injunctive relief or other relief against any of the **Insureds**, or any civil, criminal, administrative, regulatory, arbitration or mediation proceeding or other alternative dispute resolution process initiated against any of the **Insureds**[.][11]

---

[7]  *See* the Primary Policies.  Because the operative language of the Policies is identical the Court may sometimes cite to them interchangeably.

[8]  *See, e.g.*, XL 2017-2018 policy at BFT00057043 ("Coverage hereunder will apply in conformance with the terms, conditions, endorsements and warranties of the Primary Policy together with the terms, conditions, endorsements and warranties of any other Underlying Insurance."). At oral argument, Executive Risk stressed that its policy included a notice-and-consent to settlement provision that is distinct from the Primary Policies and Excess Policies. MSJ Tr. at 35-39; *see* JA Ex. 19 at ERCF00538 (defining the notice-and-settlement provisions of the Executive Risk 2017-2018 policy).  The distinct notice-and-settlement provision might just provide alternative grounds to absolve Executive Risk of any coverage responsibility. But as the Court concludes neither the *Keippel* nor the *Belin* actions fall within 2017-2018 policy, Executive Risk has no further obligations related to those two actions. Accordingly, the Court needn't address the arguments related to the Executive Risk policy's separate notice-and-settlement consent provisions.

[9]  2017-2018 primary policy § I.B.1.

[10]  *Id.* § II.K.1.

[11]  *Id.* § II.B.1.

Additionally, Insurers agreed to pay Benefytt for any "**Company Loss** resulting from any **Securities Claim** first made against the **Company** during the **Policy Period** for a **Wrongful Act**."[12]

The Policies recognize the possibility of multiple claims related to the same underlying conduct.[13] Accordingly, the Policies provide:

> More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following dates:
>
> 1. the date on which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or
>
> 2. the date on which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Clause[.][14]

"Wrongful Act" is defined as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty," by a covered individual or entity.[15] Similarly, "Interrelated Wrongful Acts" are defined as "**Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or

---

[12]   *Id.* § I.C.

[13]   *Id.* § IV.C.

[14]   *Id.*

[15]   *Id.* § I.BB.

transaction."[16]

The Policies contain several coverage exclusions.[17] Relevant here is the "Professional Services Exclusion" which bars coverage:

> For any act, error or omission in connection with the performance of any professional services by or on behalf of the Company for the benefit of any other entity or person; provided however that this Exclusion shall not apply to a Securities Claim.[18]

Notably, the Policies don't define "professional service."[19]

The Policies require Benefytt to give Insurers notice of any claim for which it seeks coverage.[20] Benefytt may also provide a Notice of Circumstances if it "become[s] aware of a specific fact, circumstance or situation which could reasonably give rise to a **Claim**."[21] If the notice of claim details "the specific fact, circumstance, [or] situation . . . the consequences which have resulted or may result therefrom; and the circumstance by which [Benefytt] first became aware thereof," then any subsequent related claim "shall be deemed . . . to have been first made or commenced at the time such notice was first given."[22]

---

[16] *Id.* § I.M.

[17] *Id.* § III.

[18] *Id.* at ENDUR001846 ("Professional Services Exclusion").

[19] *See generally* Professional Services Exclusion; JA Ex. 21.

[20] 2017-2018 primary policy § VI.A.

[21] *Id.* § VI.C.

[22] *Id.*

## C. THE UNDERLYING ACTIONS AGAINST BENEFYTT

Central to the parties' coverage disputes are the seven underlying actions that Benefytt had to defend. Those are the *Keippel* action, the *Belin* action, the *Daniels* action, the *DiFalco* action, the *Rector* action, the Federal Trade Commission action, and the *Spiewak* action.

### 1. The *Keippel* Action

First filed in February 2019, the *Keippel* action was a securities class action which asserted claims against Benefytt, its CEO, and its CFO.[23] In July 2019, the *Keippel* action became a consolidated class action asserting the same claims, against the same defendants, with a class period of September 25, 2017 through April 11, 2019.[24]

The *Keippel* plaintiffs brought claims for violation of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.[25] The consolidated complaint alleged that: (1) Benefytt and a health insurance provider, Simple Health, conspired to sell Benefytt products to customers who falsely believed they were buying comprehensive health insurance;[26] (2) Benefytt omitted material information and

---

[23] Class Action Complaint for *Keippel v. Health Ins. Innovation, Inc., et al.*, Case No. 8:19-cv-00421-WFJ-CPJ (M.D. Fla. Feb. 18, 2019) ("*Keippel* Original Compl.") (JA Ex. 6).

[24] JA Ex. 7 ("*Keippel* Compl.") ¶ 228.

[25] *Keippel* Compl. ¶¶ 242-257.

[26] *Id.* ¶¶ 49-69.

made false statements to investors by failing to disclose the specifics of the Simple Health scheme;[27] (3) Benefytt's directors were aware of the Simple Health scheme since they received thousands of customer complaints;[28] and (4) the individual defendants participated in the endeavor so they could sell their Benefytt stock at an artificially high price.[29]

Before the action was consolidated, Benefytt provided notice of the *Keippel* action and Lloyd's accepted coverage for the suit under the 2018-2019 primary policy.[30] But Lloyd's revised its position in December 2019, months after the action was consolidated. It argued the *Keippel* action was interrelated to three earlier lawsuits, which meant that the action now fell within the 2017-2018 primary policy's coverage period.[31] Despite this change, Lloyd's agreed to cover the *Keippel* settlement and defense costs under the 2018-2019 primary policy while reserving its right to contest the *Keippel* claim's placement.[32]

Ultimately, the *Keippel* action settled for $11 million that was paid to class

---

[27] *See id.* ¶¶ 158-59.

[28] *Id.* ¶¶ 70-114.

[29] *See id.* ¶¶ 83, 121-35.

[30] Affidavit of Carla M. Jones in Support of Plaintiff's Motion for Partial Summary Judgment Regarding Keippel Claim Placement for Primary and Excess D&O Insurance Coverage and a Ruling that Lloyd's Counterclaims Fail as Matter of Law ("*Keippel* Jones Aff.") Ex. 1.

[31] *Keippel* Jones Aff. Ex. 2.

[32] *Id.*

members plus approximately $4.2 million in attorneys' fees.[33]

## 2. The *Belin* Action

The original *Belin* class action complaint was filed on June 7, 2019, and asserted claims against Benefytt with a class period of June 2015 to June 2019.[34] On July 17, 2019, the *Belin* plaintiffs amended their complaint to add Benefytt's chairman and founder Michael Kosloske as a defendant.[35] The *Belin* complaint was later amended two more times, with the third and final amended complaint filed in October 2020.[36]

The *Belin* class consisted of individuals who "purchased [Benefytt's] limited benefit indemnity plans through Simple Health."[37] The third amended complaint brought claims for: (1) violation of RICO § 1962(c); (2) violation of RICO § 1962(d); (3) unjust enrichment; (4) aiding and abetting a violation of RICO § 1962(c); (5) aiding and abetting breach of fiduciary duties; and (6) aiding and abetting fraud.[38]

---

[33] *Id.* at Ex. 4, at 12-15.

[34] *See* Class Action Complaint, *Belin v. Health Ins. Innovations, Inc. et al.*, Case No. 0:19-cv-61430-AHS (S.D. Fla. June 7, 2019) ¶¶ 1-7, 172 (JA Ex. 9) ("First *Belin* Compl.").

[35] *See* First Amended Class Action Complaint, *Belin v. Health Ins. Innovations, Inc., et al.*, Case No. 0:19-cv-61430-AHS (S.D. Fla. July 17, 2019) (JA Ex. 10) ("*Belin* First Am. Compl.").

[36] *See* Third Amended Class Action Complaint, *Belin v. Health Ins. Innovations, Inc., et al.*, Case No. 0:19-cv-61430-AHS (S.D. Fla. Oct. 28, 2020) (JA Ex. 12) ("*Belin* Third Am. Compl.").

[37] *Belin* Third Am. Compl. ¶ 261.

[38] *Id.* ¶¶ 269-305.

On October 31, 2019, Benefytt provided its 2018-2019 Insurers with notice of the *Belin* action along with the original and first amended complaints (the "*Belin* Notice").[39] Insurers denied coverage arguing the *Belin* notice was insufficient, and the *Belin* action only became a covered claim after the 2018-2019 policies had expired.[40] In 2021, Benefytt settled the *Belin* action for $27.5 million.[41]

### 3. The *Daniels*[42] and *DiFalco*[43] Actions

The *Daniels* complaint was filed in April 2018 and asserted securities law violations and corporate duty breach claims against several Benefytt directors.[44] The action had a class period running from November 3, 2016 to April 6, 2018.[45]

Similarly, the *DiFalco* action was also filed in April 2018, with a similar class period of November 3, 2016 to April 5, 2018 (its class period was only a day shorter than the period in the *Daniels* action) and its claims were identical to the *Daniels*

---

[39] Affidavit of Carla Jones in Support of Plaintiff's Motion for Partial Summary Judgment Regarding Insurance Coverage for the Belin Claim Under Defendants Primary and Excess D&O Coverage ("*Belin* Jones Aff.") Ex. 8 (D.I. 249).

[40] *Belin* Jones Aff. Ex. 9.

[41] *Id.* at Exs. 1, 2 (providing court approval of the *Belin* settlement).

[42] *Daniels v. Health Ins. Innovations, Inc., et al.*, Case No. 1:18- 00527-UNA (D. Del. Apr. 6, 2018).

[43] *DiFalco v. Health Ins. Innovations, Inc., et al.*, Case No. 1:18- cv-00519-UNA (D. Del. Apr. 5, 2018).

[44] Verified Shareholder Derivative Complaint, *Daniels v. Health Ins. Innovations, Inc., et al.*, Case No. 1:18- 00527-UNA (D. Del. Apr. 6, 2018) ("*Daniels* Compl.") ¶¶ 234-284 (JA Ex. 14).

[45] *Daniels* Compl. ¶ 1.

action claims.[46]

The *Daniels* and *DiFalco* actions are functionally identical for the purpose of this litigation. Both actions alleged violations of Sections 14(a), 10(b), 20(a), and SEC Rule 10b-5, fiduciary duty breaches, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets.[47] The plaintiffs alleged Benefytt's directors made false statements and omitted material information concerning Benefytt's Florida third-party administrator ("TPA") application.[48]

### 4. The *Rector* Action

The *Rector* action was filed in March 2018, and asserted various claims against Benefytt's directors. It had a class period of November 3, 2016 to September 11, 2017.[49]

The *Rector* complaint brought claims for violations of Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 as well as a violation of SEC Rule 10b-5.[50] Similar to the *Daniels* and *DiFalco* actions, the *Rector* action alleged that Benefytt's directors made material misstatements and omissions related to

---

[46] Verified Shareholder Derivative Complaint, *DiFalco v. Health Ins. Innovations, Inc., et al.*, Case No. 1:18- cv-00519-UNA (D. Del. Apr. 5, 2018) ("*DiFalco* Compl.") ¶ 1 (JA Ex. 15).

[47] *DiFalco* Compl. ¶¶ 234-84.

[48] *Id.* ¶¶ 11-13, 110-18, 136; *Daniels* Compl. ¶¶ 4-14, 100-118.

[49] Consolidated Class Action Complaint, *In re Health Ins. Innovations Securities Litig.*, Case No. 8:17-cv-02186-EAKMAP (M.D. Fla. Mar. 23, 2018) ¶¶ 1-2 (JA Ex. 17).

[50] *Id.*

Benefytt's Florida TPA application.[51]  This action ultimately settled for $924,000 plus expenses.[52]

### 5.  The Federal Trade Commission Action

In October 2018, the Federal Trade Commission (FTC) filed an action alleging Simple Health, its directors, and other similar entities engaged in practices that violated the Federal Trade Commission Act and Telemarketing Sales Rules.[53] The suit challenged Simple Health's alleged practice of selling "[l]imited benefit plans to consumers" who "thought they had purchased comprehensive health insurance" leaving them "without [] coverage."[54]  The FTC sought an injunction and any relief "necessary to redress injury to consumers."[55]  Benefytt provided its 2018-2019 Insurers with notice of the FTC action in December 2018, including a copy of the complaint (collectively, the "2018 Notice of Circumstances").[56] Notice of this action was provided as a precautionary Notice of Circumstance because Benefytt wasn't listed in the action but Benefytt could foresee their business with Simple Health giving rise to a claim.[57]

---

[51]  *Id.* ¶¶ 155-65.

[52]  *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1186838, at *2 (M.D. Fla. Mar. 30, 2021).

[53]  *Belin* Jones Aff. Ex. 3, at ENDUR007813-40.

[54]  *Id.* at ENDUR007818-19.

[55]  *Id.* at ENDUR007839.

[56]  *Belin* Jones Aff. Exs. 3, 8.

[57]  *See id.* at Ex. 3.

- 11 -

### 6. The *Spiewak* Action

In October 2018, Matthew Spiewak filed suit against Benefytt seeking a declaration that he was the managing general agent of a health insurance vendor that sold Benefytt products and insisting Benefytt breached their commission agreement.[58] In the 2018 Notice of Circumstances, as required by the D&O policy, Benefytt provided the Insurers notice of the *Spiewak* action and a copy of the *Spiewak* complaint.[59]

### D. PROCEDURAL HISTORY OF THIS LITIGATION

Benefytt initiated this suit in February 2021.[60] After the Court denied Executive Risk's motion to dismiss the Second Amended Complaint,[61] Benefytt filed the now-operative twelve-count Third Amended Complaint.[62]

In Count I, Benefytt seeks declaratory judgment concerning the *Belin* action as to "whether: (i) the *Belin* Claim is a claim first made in the 2018-2019 policy period; (ii) Argonaut and Endurance must provide insurance coverage up to their respective policy limits for the *Belin* Claim costs of defense and damages, including from settlement, and that their policies otherwise cover the *Belin* Claim; and (iii) the

---

[58]   *Id.* at ENDUR007842-43, ENDUR007847-49.

[59]   *Belin* Jones Aff. Exs. 3, 8.

[60]   *See* Complaint (D.I. 1). *See also* D.I. 290 and 294 (notice of bankruptcy and order transferring matter back from dormant docket).

[61]   *See Benefytt I*, 2022 WL 16504, at *1.

[62]   *See* Third Am. Compl. ¶¶ 124-226.

*Belin* Claim is related to the *Keippel* Claim."[63]

Count III seeks declaratory judgment regarding "whether [] the *Keippel* Claim was first made in the 2018-2019 policy period and is not related to the 2017-2018 Actions, and Lloyd's may not seek reimbursement from Benefytt for amounts paid by Lloyd's under the Lloyd's 18-19 Primary Policy in defense and settlement of the *Keippel* Claim[.]"[64]

Count IV seeks declaratory judgment (in the alternative to Count III), as to "whether: (i) the *Keippel* Claim was first made in the 2018-2019 policy period and is not related to the 2017-2018 Actions, and Lloyd's may not seek reimbursement from Benefytt for amounts paid by Lloyd's under the Lloyd's 18-19 Primary Policy in defense and settlement of the *Keippel* Claim; and (ii) if not, then the Lloyd's, XL, Executive Risk and Endurance must pay the *Keippel* Claim in full under the 2017-2018 policy period."[65]

Count V alleges (in the alternative) that Lloyd's, XL, Executive Risk and Endurance breached their contract concerning the *Keippel* action.[66] Also, Count VII alleges that Argonaut and Endurance breached its contract concerning the *Belin*

---

[63]  *Id.* ¶ 132.

[64]  *Id.* ¶ 147.  The "2017-2018 Actions" are collectively the *Rector*, *Daniels* and *DiFalco* actions.

[65]  *Id.* ¶ 158.

[66]  *Id.* ¶¶ 159-67.

action.[67] While, Count XII alleges (in the alternative) that Lloyd's, XL, Argonaut, CapSpecialty, Maxum, and Endurance breached their contract concerning the *Belin* action.[68]

Because Benefytt reached settlements with CapSpecialty,[69] Maxum,[70] and Argnonaut,[71] claims which name only them as defendants (Counts II, VI, VIII, IX, X, and XI) are moot.

Lloyd's also filed counterclaims on Counts I, II, III, IV, and V.[72] In Count I, Lloyd's seeks a declaration that the *Rector*, *Daniels*, *Keippel*, and other related actions all involve the same wrongful or interrelated wrongful act and all constitute a single claim first made during the 2017-2018 policy period and thus are subject to a single $10 million limit.[73] Additionally, Lloyd's seeks a declaration that there is no coverage for the *Belin* action under the 2018-2019 policy, and that Lloyd's is owed the amount it paid in excess of $10 million, totaling $5.2 million.[74]

In Count II, Lloyd's seeks a declaration that there is no coverage for the

---

[67] *Id.* ¶¶ 175-82.

[68] *Id.* ¶¶ 214-26.

[69] Partial Stipulation of Dismissal, Against Capitol Specialty Insurance Corporation ("CSIC") as well as all counterclaims asserted by CSIC against Benefytt (D.I. 144).

[70] D.I 163 (granting stipulated dismissal of Maxum).

[71] D.I 236 (order granting dismissal of Argonaut).

[72] D.I. 134 ("Countercl.").

[73] Countercl. ¶¶ 14, 84-91.

[74] *Id.* ¶ 91.

- 14 -

*Keippel* action because that action "involves Wrongful Acts that are the subject of notices given in the 2017-2018 policy period."[75] Additionally, Lloyd's seeks a declaration that there is no coverage for the *Belin* action under the 2018-2019 policy, and Benefytt is entitled to repayment for the costs and expenses it incurred in regard to the *Keippel* action.[76]

In Count III, Lloyd's seeks a reimbursement for the costs and expenses it incurred above the policy limit.[77] In Count IV, Lloyd's asserts unjust enrichment against Benefytt.[78] And in Count V, Lloyd's asserts that Benefytt breached its contracts with Lloyd's regarding the *Keippel* action.[79]

Plaintiff Benefytt and Defendants Lloyd's, XL Specialty, Endurance, and Executive Risk have all moved for summary judgment. Briefing and argument on each of the motions that remain before the Court is complete. They are now ripe for decision.

---

[75] *Id.* ¶ 94.

[76] *Id.* ¶ 97.

[77] *Id.* ¶¶ 98-106.

[78] *Id.* ¶¶ 107-17.

[79] *Id.* ¶¶ 118-24.

## II.  THE PARTIES CONTENTIONS

### A.  BENEFYTT'S MOTION FOR SUMMARY JUDGMENT REGARDING *KEIPPEL* AND ON LLOYD'S COUNTERCLAIMS[80]

Benefytt contends that the 2018-2019 policies cover the *Keippel* action.[81] According to Benefytt, the *Keippel* action was filed during the 2018-2019 policies' coverage period, so the only way it could be a 2017-2018 policy claim is if it is interrelated to the 2017-2018 Actions.[82]  Benefytt insists that neither the facts nor case law support finding that the *Keippel* action was interrelated with any other lawsuit.[83]  Additionally, Benefytt says that Lloyd's recoupment claim fails because nothing in the Primary Policies permits recoupment of an overpayment by Lloyd's, especially as Lloyd's could have included such a provision when it drafted those insurance contracts.[84]

### B.  BENEFYTT'S MOTION FOR SUMMARY JUDGMENT REGARDING *BELIN*[85]

Benefytt argues the *Belin* action is a covered claim.[86]  To Benefytt, the original *Belin* complaint's lack of a securities claim doesn't preclude coverage because the

---

[80]  D.I. 247 ("Benefytt Keippel MSJ").

[81]  Benefytt Keippel MSJ at 17-29.

[82]  *Id.* at 1-2, 17.

[83]  *Id.* at 17-29.

[84]  *Id.* at 32-33.

[85]  D.I. 249 ("Benefytt Belin MSJ").

[86]  Benefytt Belin MSJ at 11-15.

ultimate settlement included at least some covered loss related to Mr. Kosloske.[87]

Similarly, Benefytt maintains its 2018 Notice of Circumstances also applies to the *Belin* action.[88] And, even if notice was insufficient, says Benefytt, that doesn't bar coverage because Insurers have demonstrated no prejudice.[89] Finally, Benefytt submits that the *Keippel* action is not interrelated with the *Belin* action, and the *Keippel* claim was first made during the 2018-2019 policy period.[90] Benefytt also rejects Insurers' contention that the Professional Services Exclusion bars coverage because the Policies don't define "professional service" and "[a]ny uncertainty in the language must be resolved against the insurance company" in favor of coverage.[91]

## C. XL SPECIALTY'S MOTION FOR SUMMARY JUDGMENT[92]

Defendant XL Specialty moves for summary judgment requesting its exit from the case because it has paid "all sums that [it] owes or could be held to owe for the *Keippel* Action and *Belin* Action."[93] XL Specialty notes that it "agreed to pay $5 million towards the settlement and defense costs for the *Keippel* Action," because

---

[87]  *Id.* at 20-25.

[88]  *Id.* at 25-28.

[89]  *Id.* at 28-29.

[90]  *Id.* at 29-31.

[91]  *Id.* at 11-19 (citing *Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1255 (Del. 2008)).

[92]  D.I. 240 ("XL Specialty MSJ").

[93]  XL Specialty MSJ at 1.

it "occupied the same first excess position [in] both [policy periods]."[94] Because that $5 million payment exhausted its coverage limit, XL says it doesn't owe any more no matter how the Court rules on the other parties' arguments.[95]

While not going quite that far, Benefytt does agree that "XL has paid its 2018-2019 policy limits for the Keippel Claim as a Claim first made in February 2019."[96] And important to the resolution of XL's individual motion, all parties agree that:

> If the Court finds that the *Keippel* Claim is fully covered under the 2018-2019 Policies, and the *Belin* Claim is not covered under either the 2017-2018 Policies or the 2018-2019 Policies . . . [for the] 2018-2019 Policies . . . XL's policy limits are exhausted by its prior payment toward the *Keippel* Claim . . .[97]

### D. EXECUTIVE RISK'S MOTION FOR SUMMARY JUDGMENT[98]

Executive Risk was only an excess insurer for the 2017-2018 policy period.[99] It insists that it owes nothing to Benefytt because neither the *Keippel* action nor the *Belin* action are claims that fall under the 2017-2018 policy's coverage period.[100] In

---

[94] *Id.* at 3 (citing Defendant XL Specialty Insurance Company's Answer and Affirmative Defenses to Plaintiff's Third Amended Complaint ¶ 105 ("XL admits that it agreed to pay settlement and defense costs for the Keippel Action up to $5 million, the limit of liability under both its 2017-2018 policy and its 2018-2019 policy under a full reservation of rights.") (D.I. 132)).

[95] *Id.* at 3-4.

[96] D.I. 265 ("Benefytt's Omnibus Answer") at 6.

[97] D.I. 331 (Parties' Joint Submission Regarding Potential Coverage Outcomes) at 3 (cleaned up).

[98] D.I. 243 ("Executive Risk MSJ").

[99] *See* JA Ex. 19.

[100] Executive Risk MSJ at 16 ("neither *Keippel* nor *Belin* was a claim first made during the period of the ER Policy").

making that argument, Executive Risk contends that the *Keippel* and *Belin* actions are also not interrelated with each other or the 2017-2018 Actions.[101]

In the alternative, Executive Risk submits the *Belin* action is uncovered because Benefytt failed to comply with the notice-and-settlement consent provisions unique to the Executive Risk policy.[102] It also says that the claim would be barred by the Professional Services Exclusion.[103]

### E. ENDURANCE'S MOTION FOR SUMMARY JUDGMENT[104]

Endurance argues that the *Keippel* and *Belin* actions fall within the coverage policy that was in effect when Benefytt first noticed a "covered claim" arising out of the litigation.[105]

Endurance adopts Benefytt's position that the *Keippel* action falls within the 2018-2019 policy because it was filed in February 2019 and reported in March 2019.[106] Given that Benefytt incurred $11 million in settlement costs[107] and $4.3

---

[101] *Id.* at 17-29.

[102] *Id.* at 32-26.

[103] *Id.* at 30.

[104] D.I. 244 ("Endurance MSJ").

[105] Endurance MSJ at 22-25.

[106] *Id.* at 22.

[107] JA Ex. 8 ("*Keippel* Settlement"); Declaration of David J. Soldo, Esquire in Support of Defendant Endurance Assurance Corporation's Motion for Summary Judgment ("Soldo Aff.") Ex. 1 (approving the *Keippel* Settlement) (D.I. 244).

million in defense costs,[108] Endurance maintains the *Keippel* action does "not trigger [its] 2018-19 excess policy layer."[109]

Regarding the *Belin* action, Endurance suggests that while the suit was first filed during the 2018-2019 policy's coverage period, it did not become a covered claim until June 17, 2019, when the first amended complaint was filed.[110] Endurance notes that Benefytt didn't report the *Belin* action until October 31, 2019.[111] Accordingly, Endurance maintains the *Belin* action isn't indemnifiable because it was not a covered claim and was not reported until the 2018-2019 policy expired.[112]

Endurance also argues that regardless of where the *Belin* action is placed (1) there is no covered loss and (2) the Professional Services Exclusion bars coverage.[113] Specifically, Endurance argues the *Belin* action made allegations against Mr. Kosloske, not Benefytt, and "Kosloske paid nothing toward the *Belin* settlement."[114] It also says the *Belin* claim concerned wrongful acts performed in

---

[108] Soldo Aff. Ex. 2, at 2-4.

[109] Endurance MSJ at 24.

[110] *Id.* at 24-25. Endurance points out that the Policies only cover "Company Loss" for securities suits and the *Belin* action was a consumer class action. *Id.* (citing 2017-2018 primary policy § I.C.). Thus, says Endurance, the fact that Benefytt was named in the first *Belin* complaint didn't trigger coverage. *Id.* Rather, the *Belin* action only became a covered claim when the complaint was amended to add Mr. Kosloske, an "Insured Person," as a defendant. *Id.* (citing 2017-2018 primary policy §§ I.B.1, II.K.1.).

[111] *Id.* at 24 (citing Soldo Aff. Ex. 5 (October 2019 notice of *Belin* claim)).

[112] *Id*. at 24-26.

[113] *Id*. at 30.

[114] *Id*. at 31.

connection with professional services which the Policies don't cover.[115]

Finally, Endurance contends neither the *Keippel* action nor the *Belin* action are interrelated to any previous suit.[116]

## F. LLOYD'S MOTION FOR SUMMARY JUDGMENT[117]

Lloyd's Motion for Summary Judgment asks for three declarations.[118] First, Lloyd's requests a declaration that the *Keippel* action is a 2017-2018 policy claim because "it involve[d] the same Wrongful Acts or Interrelated Wrongful acts" as the 2017-2018 Actions.[119] Lloyd's argues that the actions have "as a common nexus the same facts [and] circumstances," because they all challenge "wrongful acts regarding sales misconduct and misrepresentations or omissions related thereto."[120]

Second, Lloyd's asks the Court to declare there is no coverage for the *Belin* action. It posits two independent reasons therefor: (1) the *Belin* action is barred by the Professional Services Exclusion; and (2) the original *Belin* complaint wasn't

---

[115] *Id*. at 32-34.

[116] *Id*. at 22-23, 28-30.

[117] D.I. 245 ("Lloyd's MSJ").

[118] Lloyd's MSJ at 35 ("(1) the Keippel Action is a Claim first made in the 2017-2018 Policy, (2) there is no coverage under the Policies for the Belin Action or, in the alternative, the Belin Action and the 2017-2018 Actions involve Interrelated Wrongful Acts and constitute a single Claim first made in the 2017-2018 Policy, and (3) Underwriters are entitled to recoup the defense costs and settlements paid by them in the Actions in excess of the $10,000,000 limit under the 2017-2018 Policy.").

[119] *Id.* at 22-26.

[120] *Id.* at 26.

covered and the would-be covered amended complaint was filed after the 2018-2019 policy period ended.[121] As an alternative, Lloyd's suggests that the Court find that the *Belin* action claim was first made in 2017-2018 as it is interrelated to the *Keippel*, *Rector*, *DiFalco*, and *Daniels* claims.[122]

Finally, Lloyd's insists that it is entitled to recoup the $5.3 million it overpaid to Benefytt under the 2017-2018 policy.[123]

## III. APPLICABLE LEGAL STANDARDS

### A. DELAWARE MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits" show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[124] The movant bears the initial burden of proving its motion is supported by undisputed facts.[125] If the movant meets its burden, the non-movant must show there is a "genuine issue for trial."[126] To determine whether a genuine

---

[121] *Id.* at 27-33.

[122] *Id.* at 35; *id.* at 33 ("The alleged facts and circumstances underlying the Keippel Action and the Belin Action are virtually identical.").

[123] *Id.* at 26-27.

[124] Del. Super. Ct. Civ. R. 56(c); *Options Clearing Corp. v. U.S. Specialty Ins. Co.*, 2021 WL 5577251, at *7 (Del. Super. Ct. Nov. 30, 2021).

[125] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[126] Del. Super. Ct. Civ. R. 56(e); *see also Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) ("If the facts permit reasonable persons to draw but one inference, the question is ripe for summary judgment.").

issue exists, the Court construes the facts in the light most favorable to the non-movant.[127]

The same "well-established standards and rules apply in full when the parties have filed cross-motions for summary judgment."[128] Here, since the cross-motions are filed and "neither party argues the existence of a genuine issue of material fact, 'the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the[m].'"[129]

## B. NEW YORK INSURANCE CONTRACT INTERPRETATION

There is no dispute that the Policies are governed by New York law.[130] As such, the interpretation of an insurance policy is a question of law.[131] "[T]he duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased."[132]

When determining whether claims are interrelated, New York courts examine

---

[127] *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977).

[128] *Radulski v. Liberty Mutual Fire Ins. Co.*, 2020 WL 8676027, at *4 n.35 (Del. Super. Ct. Oct. 28, 2020) (collecting cases); *Zenith Energy Terminals Joliet Hldgs. LLC v. CenterPoint Props. Tr.*, 2023 WL 615997, at *8 (Del. Super. Ct. Jan. 23, 2023).

[129] *Radulski*, 2020 WL 8676027, at *4 (alteration in original) (quoting Del. Super. Ct. Civ. R. 56(h)).

[130] 2017-2018 primary policy ("Choice of Law . . . This insurance shall be governed by and construed in accordance with the law of New York . . ."); 2018-2019 primary policy ("Declarations Item N . . . Choice of Law  New York.").

[131] *Hansard v. Federal Ins. Co.*, 147 A.D.3d 734, 737 (N.Y. App. Div. 2017).

[132] *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272 (N.Y. 1984).

- 23 -

the coverage policy's terms and conduct a comparison of the claims at issue.[133] The Court decides: (1) whether the provisions are ambiguous as a matter of law, and if the answer to that question is yes, then what are the "plain and ordinary meanings" if the provisions applied to the facts,[134] and (2) "whether the Actions are related" by "engag[ing] in a 'side-by-side review of the underlying claims.'"[135] "'[T]o establish that a prior Claim is interrelated with a subsequent Claim, the Claims must share a sufficient factual nexus.'"[136] "A sufficient factual nexus exists where the Claims 'are neither factually nor legally distinct, but instead arise from common facts' and where the 'logically connected facts and circumstances demonstrate a factual nexus'

---

[133] *Zunenshine v. Exec. Risk Indem., Inc.*, 1998 WL 483475, at *4 (S.D.N.Y. Aug. 17, 1998), *aff'd*, 182 F.3d 902 (2d Cir. 1999).

[134] *Lonstein Law Office, P.C. v. Evanston Ins. Co.*, 2022 WL 311391, at *8 (S.D.N.Y) (quoting *Nomura Holding Am., Inc. v. Federal Ins. Co.*, 45 F. Supp. 3d 354, 364 (S.D.N.Y. 2014), *aff'd*, 629 F. App'x 38 (2d Cir. 2015)).

[135] *Id.* (quoting *Nomura Hldg.*, 629 F.App'x at 40).

While not universally applied, New York courts typically use "a side-by-side review of the factual allegations in the relevant complaints" to determine if a sufficient factual nexus exists. *Lonstein*, 2022 WL 311391, at *11 (citing *Cushman & Wakefield, Inc. v. Illinois Nat'l Ins. Co.*, 2018 WL 1898339, at *17-18 (N.D. Ill. Apr. 20, 2018) (applying New York law)); *Glascoff v. OneBeacon Midwest Ins. Co.*, 2014 WL 1876984, at *6 (S.D.N.Y. May 8, 2014); *see Zahler v. Twin City Fire Ins. Co.*, 2006 WL 846352, at *6-7 (S.D.N.Y. Mar. 31, 2006) (applying the side-by-side test to determine two claims were interrelated). *But see Alvarez v. XL Specialty Ins. Co.*, 2021 WL 2940963, at *4 (N.Y. Sup. Ct. July 12, 2021) (noting that the court did not engage the side-by-side test when determining two suits weren't interrelated). But even where a New York court doesn't apply the side-by-side methodology, it will nevertheless consider the underlying complaints' allegations. *See Darwin Nat. Assur. Co. v. Westport Ins. Corp.*, 2015 WL 1475887, at *12-14 (E.D.N.Y. Mar. 31, 2015); *Alvarez*, 2021 WL 2940963, at *4.

[136] *Glascoff*, 2014 WL 1876984, at *5 (applying New York Law) (quoting *Quanta Lines Ins. Co. v. Investors Capital Corp.*, 2009 WL 4884096, at *12 (S.D.N.Y. Dec. 17, 2009)); *Seneca Ins. Co. v. Kemper Ins. Co.*, 2004 WL 1145830, at *8-9 (S.D.N.Y. May 21, 2004), *aff'd*, 133 F. App'x 770 (2d Cir. 2005); *Zunenshine*, 1998 WL 483475, at *5.

among the Claims."[137]  But claims need not "involve precisely the same parties, legal theories, Wrongful Acts, or requests for relief" to be interrelated.[138]  Rather, "all that is required is 'any' common fact, circumstance, situation, event, transaction, cause or series of casually or logically connected facts, circumstances, situations, events, transactions or causes."[139]  That said, New York courts may draw the line at interrelatedness when the connection between the "two claims [is] tenuous at best."[140]

## IV. DISCUSSION

The nub of the dispute (and inter-disputes) here is the proper policy-period placement for the *Keippel* and *Belin* actions, and whether they are interrelated to previous, covered actions.  For a claim to be covered, (1) the claim must be a claim against an Insured Person made within a covered policy period or interrelated to a covered claim, and (2) the Insurers must receive a proper notice of circumstances.

The Policy's insuring language mandates coverage for "any **Claim** first made

---

[137] *Quanta Lines*, 2009 WL 4884096, at *14, *aff'd sub nom.*, *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*, 403 F. App'x 530 (2d Cir. 2010) (internal reference omitted).

[138] *Zunenshine*, 1998 WL 483475, at *5; *see Glascoff*, 2014 WL 1876984, at *5.

[139] *Weaver v. Axis Surplus Ins. Co.*, 2014 WL 5500667, at *12 (E.D.N.Y. Oct. 30, 2014), *aff'd*, 639 F. App'x 764 (2d Cir. 2016).

[140] *See Glascoff*, 2014 WL 1876984, at *6 ("Here, the factual overlap between the two Claims is tenuous at best:  Plaintiffs allegedly failed to act properly with respect to Antonucci, whether it be their control and oversight of him, as alleged in the Kingsley Complaint, or their failure to investigate allegations of his misconduct, as alleged by the FDIC.").

against the **Insured Persons.**"[141] A "Claim" is defined as:

> any written demand for monetary damages, non monetary relief, injunctive relief or other relief against any of the **Insureds**, or any civil, criminal, administrative, regulatory, arbitration or mediation proceeding or other alternative dispute resolution process initiated against any of the **Insureds**[.][142]

Interrelated Wrongful Acts mean: "**Wrongful Acts** which have as a common nexus *any* fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions."[143] And there is little dispute that the actions' allegations constitute wrongful acts.

For coverage, multiple claims can constitute a single claim if they involve the same wrongful act or interrelated acts.[144] If this occurs, the earlier date is deemed the first-made date and the later claims are covered as if they were filed within the original policy period.[145]

Also, the Notification Provision of the 2018-2019 primary policy states that notice must be provided:

> **C.** If the **Insureds**:
>> 1. become aware of a specific fact, circumstance or situation which could reasonably give rise to a **Claim** or **Investigation**, or

---

[141] 2017-2018 primary policy § II.

[142] *Id.* § II.B.1.

[143] *Id.* § II (emphasis added).

[144] *Id.* § IV.

[145] *Id.*

2. receive any request to toll a period or statute of limitation which may be applicable to any **Claim** or **Investigation**,

and if the **Insureds** during the **Policy Period** give written notice to Underwriters of:

(a) the specific fact, circumstance, situation or the request to toll a period or statute of limitation;

(b) the consequences which have resulted or may result therefrom; and

(c) the circumstances by which the **Insureds** first became aware thereof,

then any **Claim** or **Investigation** made subsequently arising out of such fact, circumstance, situation or the request to toll a period or statute of limitation shall be deemed for the purposes of this Policy to have been made or commenced at the time such notice was first given.[146]

Essentially, the Policies' notification provision allows that once Benefytt "become[s] aware of a specific fact, circumstance or situation which could reasonably give rise to a **Claim**," it may provide notice of "the specific fact, circumstance, [or] situation . . . the consequences which have resulted or may result therefrom; and [] the circumstances by which the **Insureds** first became aware thereof."[147] If Benefytt provides such notice "then any **Claim** . . . made subsequently arising out of such fact, circumstance, [or] situation . . . shall be deemed for the purposes of this Policy to have been made or commenced at the time such notice was first given."[148]

---

[146] 2018-2019 primary policy § VI.C.

[147] *Id.*

[148] *Id.*

## A. THE *KEIPPEL* ACTION IS COVERED BY THE **2018-2019 POLICY**.

The *Keippel* action is covered by the 2018-2019 policy because it was properly filed in accord with the Policy, and it isn't interrelated with any actions that are covered by the 2017-2018 policy period.

The *Keippel* action was a securities class action alleging securities fraud and false statements as the causes of action (Exchange Act §§ 10(b), 20(a) and SEC Rule 10b-5). The *Keippel* action was filed on February 18, 2019.[149] It was amended and consolidated on July 19, 2019.[150] And it settled in December 2020.[151]

Executive Risk, Endurance, and Benefytt say the *Keippel* action is covered by and filed in the 2018-2019 policy period.[152] While Lloyd's maintains the *Keippel* action was first filed in the 2017-2018 policy period, as an interrelated action.[153] Specifically, Lloyd's argues the *Keippel* and the 2017-2018 Actions all dealt with Interrelated Wrongful Acts.[154] If that were true, then under Section IV.C of the Policies, the *Keippel* claim should be deemed first made during the 2017-2018 policy's coverage period.[155]

---

[149] *Keippel* Original Compl.

[150] *Keippel* Compl.

[151] *Keippel* Settlement.

[152] ER's MSJ at 16-29; Endurance's MSJ at 22; Benefytt's *Keippel* MSJ at 17-20.

[153] Lloyd's MSJ at 22-26.

[154] *Id*.

[155] *See* 2017-2018 primary policy § IV.C (providing for coverage placement of claims involving

There is no dispute that the *Keippel* action itself was filed within the 2018-2019 policy period.[156] Accordingly, that action will be covered by the 2018-2019 policy period unless it is interrelated with the 2017-2018 Actions. If the *Keippel* action is interrelated, then it would be covered by the prior 2017-2018 policy period. But to be interrelated with those prior actions, the *Keippel* action must "share a sufficient factual nexus."[157]

In this case particularly, with the term "any" used in the interrelated coverage provision, "it is 'immaterial' that one claim may involve additional facts or allegations because all that is required is 'any' common fact, circumstance, situation, event, transaction, cause or series of casually or logically connected facts, circumstances, situations, events, transactions or causes."[158] That said, the claims do need "numerous logically connected facts and circumstances" to be interrelated.[159] And they shouldn't be deemed interrelated when their relation to each other is only "tenuous at best."[160]

Here, a side-by-side examination of the actions reveals that the *Keippel* action

---

the same or interrelated wrongful acts); 2018-2019 primary policy § IV.C (same).

[156] Soldo Aff. Ex. 8 (RFA 3 at 7).

[157] *Quanta Lines*, 2009 WL 4884096, at *12; *see also Glascoff*, 2014 WL 1876984, at *5.

[158] *Weaver*, 2014 WL 5500667, at *12.

[159] *See Seneca Ins. Co. v. Kemper Ins. Co.*, 133 F. App'x 770, 772 (2d Cir. 2005) (approvingly noting the district court's use of this construction when determining interrelatedness).

[160] *Glascoff*, 2014 WL 1876984, at *6.

does not share a sufficient factual nexus with the *Daniels*, *DiFalco*, or *Rector* actions.[161] Making mere allegations about a company's general misconduct that may be related to another action isn't enough.[162] Here, Lloyd's largely relies on the introduction and background of the various complaints to make bald allegations of interrelatedness; that's insufficient.[163]

Remember, the 2017-2018 Actions were also securities class actions asserting that Benefytt omitted material information and made false statements to investors.[164] But those allegations were made in connection with the Florida TPA application, not the Simple Health fraud.[165] Indeed, the 2017-2018 Actions all concerned the Florida TPA Application, while the *Keippel* action concerned Simple Health.[166] The *Keippel*

---

[161] In its briefing, Lloyd's concedes "[t]he 2017-2018 Actions are not materially different from one another" and therefore compares the *Keippel* complaint to only the *DiFalco* complaint. Lloyd's MSJ at 23 n.3. Accordingly, the Court also cites to the *DiFalco* complaint when discussing the 2017-2018 Actions here.

[162] *See Glascoff*, 2014 WL 1876984, at *7 (S.D.N.Y. May 8, 2014) (referencing *Home Ins. Co. of Ill. v. Spectrum Info Tech, Inc.*, 930 F.Supp. 825, 850 (E.D.N.Y. 1996) (finding unpersuasive the "attempt to intertwine the [claims] by relying on naked allegations in the original complaints that they represent mere pieces of a larger 'scheme'")).

[163] *See id.* (referencing *Nat'l Union Fire Ins. Co. of Pittsburgh v. Ambassador Grp., Inc.*, 691 F.Supp. 618, 623 (E.D.N.Y. 1988) (stating in *dicta* that claims aren't interrelated just because when "[b]roadly construed, the claims are interrelated to the extent that they all involve allegations of wrongdoing of one sort or another and relate, in some way, to the demise of" the entity)).

[164] *DiFalco* Compl. ¶¶ 234-84.

[165] *Id.*

[166] *See Glascoff*, 2014 WL 1876984, at *7 ("Here, Plaintiffs admit the FDIC and Kingsley Claims do not share parties, legal theories, or requests for relief, yet they want this Court to find the two Interrelated Wrongful Acts because both Claims ostensibly relate to Plaintiffs' oversight of Antonucci. Without more, there simply is not a sufficient factual nexus between the FDIC Claim and the Kingsley Claim.") (cleaned up).

action cites to completely different evidence, such as the 2017 10-K and 2018 10-Q filing, to highlight different claims of wrongdoing, and the *Keippel* action also had no allegations directed at any individuals.[167]  What's more, Simple Health—an integral non-party in the *Keippel* action—isn't discussed in the *Daniels*, *DiFalco*, or *Rector* actions.[168]

Simply put, such pleadings just don't establish "numerous logically connected facts and circumstances" Lloyd's must demonstrate.[169]  "[A]ny specific common fact, event or circumstance" shared by the various actions' claims were used only to bolster the broad, generalized allegation of wrongdoing.[170]  As such, the *Keippel* action and the 2017-2018 Actions lack a factual nexus to make them interrelated.

So *Keippel* is not interrelated to any of the 2017-2018 Actions and shouldn't be deemed made in the 2017-2018 policy period.  The Court finds that the *Keippel* action properly falls within the 2018-2019 policy period. And with this, Lloyd's recoupment argument fails as a matter of law because the *Keippel* action doesn't implicate Lloyd's coverage liability limit for the 2017-2018 primary policy.

### B. THE *BELIN* ACTION DOES NOT FALL WITHIN EITHER PRIMARY POLICY'S COVERAGE PERIOD

For the *Belin* claim, the Court finds that it is not covered by the 2018-2019

---

[167]  *See generally Keippel* Compl.

[168]  *See generally DiFalco* Compl.

[169]  *See Seneca Ins. Co.*, 133 F. App'x at 772.

[170]  *Weaver*, 2014 WL 5500667, at *12.

policy, and it is not interrelated with any covered claims. Additionally, Benefytt failed to provide a proper Notice of Circumstances for the *Belin* action.

## 1. The *Belin* action is not a covered by the 2018-2019 policy.

The *Belin* complaint was filed on June 7, 2019, which is in the 2018-2019 policy period.[171] The original complaint only sought recovery from Benefytt.[172] The complaint was subsequently amended three times, all of which were outside the 2018-2019 policy period window.[173] The first amended complaint added Mr. Kosloske as a defendant.[174]

Recall that if the claim involves the same wrongful act or interrelated acts as a prior covered claim, the earlier date is deemed the first-made date and the later claims are covered as if they were filed within the original policy period.[175] Under this Policy provision, Benefytt argues that the *Belin* Claim was first made in the 2018-2019 policy period because the original complaint made allegations against Michael Kosloske even though he was not named as a defendant yet.[176] So, Benefytt says "the *Belin* Claim triggers Defendants' coverage obligations because: (1) there

---

[171] *See generally* First *Belin* Compl.

[172] *Id.* ¶¶ 14-15, 182-209.

[173] *See Belin* First Am. Compl.; JA Ex. 11 (*Belin* Second Am. Compl.); *Belin* Third Am. Compl.

[174] *See Belin* First Am. Compl.

[175] 2017-2018 primary policy § IV.C; 2018-2019 primary policy § IV.C.

[176] Benefytt's Omnibus Answer at 49 (stating that the original complaint "still included allegations of wrongful acts by officers of Benefytt" (citations omitted)).

is a Claim against an Insured Person, Mr. Kosloske, (2) the Claim alleges Mr. Kosloske committed 'Wrongful Acts' in his then-official capacity with Benefytt; (3) and those acts resulted in 'Loss' to Benefytt for defense and settlement of the *Belin* Claim exceeding $30 million."[177]  Not so.

The original claim is not covered because it doesn't make a claim against an insured person.  Here, the language of the contract is clear; it only requires coverage of "any **Claim** first made against the **Insured Persons** . . . ."[178] For there to be coverage, the claim must be specifically pled against the insured person and demand relief from them.[179] Without such a claim, there is no covered claim within the coverage period.[180]  The original *Belin* action only makes allegations about an insured person, Mr. Kosloske, and his activity;[181] that's not enough here. Mr. Kosloske wasn't a named defendant in the original complaint, nor was any relief sought from him individually via that complaint.[182]  In fact, he wasn't even listed as

---

[177]  *Id.* at 22 (citations omitted).

[178]  2017-2018 primary policy § II.

[179]  *See Checkrite Ltd., Inc. v. Illinois Nat. Ins. Co.*, 95 F. Supp. 2d 180, 190 (S.D.N.Y. 2000) ("The term "claim" as used in liability insurance policies has generally been found by courts to be an unambiguous term that means a demand by a third party against the insured for money damages or other relief owed.").

[180]  *See id.* at 191 ("[S]ome but not all claims are judicial proceedings and some but not all judicial proceedings are claims. These terms should not be conflated.").

[181]  *See generally Belin* First Am. Compl.

[182]  *Id.*

a "relevant nonparty."[183] As such, there was no covered claim within the contracted coverage period. Accordingly, the *Belin* amended complaint cannot be covered— the original complaint didn't contain a triggering claim, so there is nothing to relate back to that could gain coverage.[184] To permit coverage to extend to the amended complaint that was filed after the coverage period expired "would be to grant the insured more coverage than [it] bargained for and paid for."[185]

Accordingly, the *Belin* action does not fall within the 2018-2019 policy period and does not give rise to a claim covered by the Policies.

### 2. The *Belin* action is not interrelated to any covered claim.

The *Belin* action could also be covered if it was interrelated to the 2017-2018 Actions or the *Keippel* claim. But it's not.

The *Belin* action was filed by a class of consumers alleging they were tricked by Simple Health into thinking they were buying comprehensive medical insurance from Benefytt when they really weren't.[186] While the *Keippel* plaintiffs brought

---

[183] *Id.* ¶¶ 16-24.

[184] It would seem that under New York law an amended complaint is considered a "new claim" when there is "a new and distinct group of claimants". *See Checkrite*, 95 F. Supp. 2d at 190. But it's a bit murkier whether an amended complaint that adds a new defendant should be also considered a "new claim" or if it should be related back to an earlier pleading or proceeding for insurance purposes. No matter. The plain language of the at-issue coverage provision alone is sufficient for the Court to find extension of coverage to the amended complaint impermissible. As is the inadequate Notice of Circumstance explained later.

[185] *Zunenshine*, 1998 WL 483475, at *5 (citation omitted).

[186] *Belin* Third Am. Compl. ¶¶ 242-257.

claims for violation of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.[187]  The 2017-2018 Actions, on the other hand, were securities class actions asserting Benefytt omitted material information and made false statements to investors regarding a Florida TPA Application.

The *Belin* action isn't interrelated to the *Keippel* action because the ties between the two are just too feeble.  Even though Benefytt's misconduct related to Simple Health is central to all the claims, there are insufficient factual overlaps between the consumers' and shareholders' claims.  The alleged wrongful acts are separated by multiple years and involve different transactions—*e.g.* insurance policy sales as compared to shareholder disclosures.[188]  There must be a reasonable limit when interpreting the term "any" as used in the interrelated coverage provision.[189] To say the ties between the actions from 2015 and actions from 2017 to 2019 with different classes and causes of action are a "series of casually or logically connected facts"—as would be required here—is to say too much.[190]  The various actions' pleadings instead read as general allegations of wrongdoing over a long period of time that indeed share similarities or even complement each other.  But that's it.  The

---

[187]  *Keippel* Compl. ¶¶ 242-257; *Keippel* also, in part, alleged that Benefytt conspired with Simple Health to sell Benefytt products to customers who falsely believed they were buying comprehensive health insurance.

[188]  *Id.* ¶ 228, 49-69, 70-114; First *Belin* Compl. ¶¶ 172, 261.

[189]  *See Weaver*, 2014 WL 5500667, at *12.

[190]  *See id.*

Court cannot say these bestrewn claims rise to the required level of interrelatedness.

The *Belin* action also isn't interrelated to the *Daniels*, *DiFalco*, or *Rector* actions. There just aren't the "numerous logically connected facts and circumstances" between the *Belin* action and the 2017-2018 Actions to support the necessary interrelatedness.[191] Lloyd's says the *Belin* action is interrelated with the 2017-2018 Actions "[f]or the same reasons" as the *Keippel* claim.[192] But as already mentioned, the *Keippel* claim itself isn't interrelated with the 2017-2018 Actions. So, to the extent Lloyd's relies on *Keippel* as the needed bridge to the 2017-2018 Actions, it fails.

Independently, while the *Belin* action and the 2017-2018 Actions both assert wrongful conduct by Benefytt, their relation to each other is also solely based on general allegations of wrongdoing. While all the claims may have a single overarching bad actor, the relationship between the schemes at issue "are tenuous at best."[193]

Accordingly, the *Belin* action is not interrelated with any covered claim.

3. **The *Belin* action is not a covered 2018-2019 policy period claim via any Notice of Circumstances.**

For coverage, there must be a proper reporting of the claim or possibility of

---

[191] *See Seneca Ins. Co.*, 133 F. App'x at 772 (noting the use of this construction by the district court when affirming dismissal of coverage complaint because claims were interrelated).

[192] Lloyd's MSJ at 35.

[193] *Glascoff*, 2014 WL 1876984, at *6.

the claim to the Insurers. This is because "[t]he nature of a claims-made policy is that it protects the insured for claims made against it and reported to the insurer within the policy period or, if applicable, the extended reporting period."[194]

In Benefytt's view, any Notice of Circumstances offered for the FTC and *Spiewak* actions also gave notice for the *Belin* action.[195] It reasons that under the operable provision[196] "the Belin Claim is deemed made and noticed in December 2018 because it arose out [sic] the situation involving the allegations against and involving Simple Health."[197] Benefytt also suggests that the 2018 Notice of Circumstances[198] is sufficient to have the action covered by the 2018-2019 period.[199] It isn't.

The notification provision requires the notice to discuss facts that "could reasonably give rise to" a later claim.[200] Thus, the proper inquiry is not if the *Belin* action alleged certain facts also present in the earlier notice, but whether the 2018 Notice of Circumstances discussed facts that later gave rise to the *Belin* claim. It didn't.

---

[194] *Checkrite*, 95 F. Supp. 2d at 191.

[195] Benefytt's *Belin* MSJ at 26-27.

[196] *E.g.* 2018-2019 primary policy § VI.C.

[197] Benefytt's *Belin* MSJ at 28.

[198] *Belin* Jones Aff. Ex. 3.

[199] Benefytt's *Belin* MSJ at 26.

[200] 2018-2019 primary policy § VI.C.

The 2018 Notice of Circumstances only provided the FTC and *Spiewak* complaints. The FTC action makes no allegations against Benefytt.[201] And the *Spiewak* action alleges Benefytt breached a managing general agent commission agreement.[202] Neither of these related to *Belin*—a consumer class action alleging Benefytt orchestrated a bait-and-switch regarding certain Benefytt products. So, the FTC and *Spiewak* complaints gives no adequate notice of facts relevant to or incorporated in the *Belin* action.

What is more, the 2018 Notice of Circumstances didn't state that Benefytt expected some future litigation.[203] So it can't be interpreted as giving notice of the *Belin* action as a possible future consequence, as was required by the Policies.[204] In so finding, the Court is mindful to stay "consistent with the rule that exclusion clauses should be construed narrowly and in favor of coverage. Interpreting [such] any other way would stretch the terms of the policy beyond reasonableness."[205]

As a last breath effort on notice, Benefytt hints that the *Belin* Notice of Circumstances itself is sufficient—even though it was filed late—because "[t]he

---

[201] *Belin* Jones Aff. Ex. 3, at ENDUR007835-40 (FTC Compl. ¶¶ 55-65).

[202] *Id.* at ENDUR007847-49 (*Spiewak* Compl. ¶¶ 30-43).

[203] *See generally* 2018-2019 primary policy § VI.C.

[204] *See* 2018-2019 primary policy § VI.C.2(b) (requiring Benefytt to provide notice of "the consequences which have resulted or *may* result," from the circumstances noticed in a Notice of Circumstances).

[205] *Checkrite*, 95 F. Supp. 2d at 196.

record is devoid of any indication of prejudice to [the Insurers]."[206]

But there is no prejudice requirement in the excess policies, such is found only in the primary policy.[207] And even that prejudice requirement only prevents Insurers from denying coverage "based solely upon late notice."[208] That doesn't save Benefytt's *Belin* claim here because the denial certainly isn't "based solely upon late notice." At bottom, the *Belin* action wasn't made during the 2018-2019 policy period and no alternative coverage theory Benefytt has posited saves it.

Given all this, Lloyd's (and any other insurer's) attempt to invoke the professional services exclusion is moot, as are its reimbursement, recoupment, and unjust enrichment counterclaims.

## V.  CONCLUSION

To sum up: (1) the *Keippel* action falls within the 2018-2019 policy period and is properly covered under that Policy; (2) the *Belin* action falls outside both the 2017-2018 and 2018-2019 policy periods and isn't interrelated with any covered claim; and (3) as such, Lloyd's reimbursement, recoupment, and unjust enrichment

---

[206] Benefytt's *Belin* MSJ at 28.

[207] *See* 2017-2018 primary policy at 57 ("Amended 'Notification' Clause") ("In consideration of the premium charged for this Policy, it is hereby understood and agreed that Clause VI. NOTIFICATION A. is amended by the addition of: In the event that the Insureds fail to provide notice of a Claim or Investigation in accordance with the above, Underwriters shall not be entitled to deny coverage for the Claim or Investigation based solely upon late notice, unless Underwriters can establish that their interests were materially prejudiced by reason of such late notice.").

[208] Amended 'Notification' Clause.

counterclaims are moot.

Accordingly,

- Benefytt's Partial Motion for Summary Judgment regarding the *Keippel* action and Lloyd's counterclaims (D.I. 246) is **GRANTED**;

- Benefytt's Partial Motion for Summary Judgment regarding the *Belin* action (D.I. 249) is **DENIED**;

- XL Specialty Insurance Company's Motion for Summary Judgment (D.I. 240) is **GRANTED**;

- Endurance's Motion for Summary Judgment (D.I. 244) is **GRANTED**;

- Executive Risk's Motion for Summary Judgment (D.I. 243) is **GRANTED**; and

- Lloyd's Motion for Summary Judgment (D.I. 245) is **GRANTED** in part, **DENIED** in part.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

Paul R. Wallace, Judge